AO 472  (Rev. 09/08) Detention Order Pending Trial

United States District Court
District of Connecticut
FILED AT    ~~SBEDFORD~~

# UNITED STATES DISTRICT COURT

Nov. 15, 2011

### for the

### District of Connecticut

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  3:11CR 198 ( MRK ) |
| | ) | 3: 11 MJ 263 (HBF) |
| Bajia Saadoun | ) | |
| *Defendant* | ) | |

## DETENTION ORDER PENDING TRIAL

After conducting a detention hearing under the Bail Reform Act, 18 U.S.C. § 3142(f), I conclude that these facts require that the defendant be detained pending trial.

### Part I—Findings of Fact

☐ (1)  The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has previously been convicted

of     ☐ a federal offense     ☐ a state or local offense that would have been a federal offense if federal

jurisdiction had existed  - that is

  ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4)or an offense listed in 18 U.S.C. § 2332b(g)(5) for which the prison term is 10 years or more.

  ☐ an offense for which the maximum sentence is death or life imprisonment.

  ☐ an offense for which a maximum prison term of ten years or more is prescribed in _____

  _____ .*

  ☐ a felony committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses:

  ☐ any felony that is not a crime of violence but involves:

    ☐ a minor victim

    ☐ the possession or use of a firearm or destructive device or any other dangerous weapon

    ☐ a failure to register under 18 U.S.C. § 2250

☐ (2)     The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state release or local offense.

☐ (3)     A period of less than five years has elapsed since the     ☐ date of conviction     ☐ the defendant's release from prison for the offense described in finding (1).

☐ (4)     Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition will reasonably assure the safety of another person or the community.  I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

☐ (1)     There is probable cause to believe that the defendant has committed an offense

  ☐ for which a maximum prison term of ten years or more is prescribed in _____ .

  ☐ under 18 U.S.C. § 924(c).

*Insert as applicable:  (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

AO 472  (Rev. 09/08)  Detention Order Pending Trial

# UNITED STATES DISTRICT COURT
## for the
### District of Connecticut

☐ (2)    The defendant has not rebutted the presumption established by finding 1 that no condition will reasonably assure the defendant's appearance and the safety of the community.

### Alternative Findings (B)

☐ (1)    There is a serious risk that the defendant will not appear.

☐ (2)    There is a serious risk that the defendant will endanger the safety of another person or the community.

### Part II— Statement of the Reasons for Detention

I find that the testimony and information submitted at the detention hearing establishes by    ☐ clear and convincing evidence    ☒ a preponderance of the evidence that

~~DETENTION IS NOT CONTESTED.~~
~~ORDER IS WITHOUT PREJUDICE.~~    *Please see attached findings*

### Part III—Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal.  The defendant must be afforded a reasonable opportunity to consult privately with defense counsel.  On order of United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States marshal for a court appearance.

Date:    11/15/2011  ~~10/06/2011~~

/s/ Holly B. Fitzsimmons, USMJ

*Judge's Signature*

Holly B. Fitzsimmons, USMJ

*Name and Title*

*Insert as applicable:  (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

This case presents complex issues involving risk of flight, which arise from the nature of the charges, the interrelationship of this defendant with co-defendants, and the history of the defendant, who has strong family ties to Morocco. The government seeks detention, and the probation officer concurs.

All of the defendants are charged with conspiring to defraud the United States by engaging in or abetting fraudulent marriages between U.S. citizens and potential immigrants from Morocco. Bahija Saadoun and her husband, Hamid Kassem, are both natives of Morocco and naturalized United States citizens. Bahija's brother, Rachid Saadoun, and sister, Fatima Saadoun, are natives of Morocco; Rachid is a legal permanent resident of the U.S., based upon his marriage to co-defendant Ebony Jaynes; and Fatima is a conditional resident of the U.S., based upon her marriage to co-defendant Geno Kousa. Hamid Kassem's brother, Khalid Kassem is a native of Morocco and a conditional permanent resident of the United States, based upon his marriage to co-defendant Dawn Peck. Defendant Fouad Elhadiri, a cousin of the Saadouns, is also a native Moroccan and a conditional resident of the U.S., who is alleged to have procured a false affidavit of support to facilitate the immigration of Elhadiri's brother from Morocco.

While the conspiracy count carries a maximum term of imprisonment of five years, the guidelines for this offense are considerably less, perhaps as low as 0 to 6 months and probably not greater than 12 months. The prosecutor represents that any defendant not a U.S. citizen will face revocation of his or her status in the U.S. and deportation if convicted. The questions presented by the government's motions for pretrial detention are (1) whether a defendant facing certain deportation upon conviction is likely to abscond from the U.S. before trial rather than serve a jail term and then be deported; and (2) whether defendants who are naturalized U.S. citizens would be motivated by that status to remain in the U.S. to face the charges rather than return to their country of origin to avoid terms of imprisonment.

There is no presumption of detention. Absent a presumption, the Bail Reform Act requires the Court to release a defendant on the least restrictive conditions which will give reasonable assurances that the defendant will appear for trial and not endanger the community or a specific person. To that end, the Court solicited proposed release packages from each defendant. The defendants were individually interviewed by probation officers, as were a number of relatives and proposed co-signers. Some of the interviewees are not fluent in English and were interviewed with the aid of a Moroccan interpreter.

From the beginning, the background information provided by the defendants raised questions of accuracy and veracity. Where and with whom the defendants live in the U.S. (admittedly an issue relevant to the underlying prosecution); the existence and location of siblings; the extent of ties to Morocco and other foreign countries, including Canada; and the availability and source of assets to be posted as surety - the Court was provided with inconsistent information from members of the same family. The usual methods of verification available to the Probation Office were not effective in determining which background information was accurate.

The court heard from the parents of three of the defendants, Bahija Saadoun, Rachid Saadoun and Fatima Saadoun. They were interviewed by probation and subsequently spoke in Court, using the services of a family friend, who acted as an interpreter. Abdellatif Saadoun said that he has a green card, and works in the U.S. as a cab driver. He offered the sum of $25,000 to serve as surety for the family, by which the undersigned understood him to mean Bahija, Rachid and Fatima. He said that his 2010 income was $30,000. It appeared that some of the funds would be contributed by others. Mr. Saadoun indicated that he has a house and a farm in Morocco from which he derives income., and that he spends three months of the year in the United States, living between the homes of his daughters, and nine months in Morocco, where he has three other daughters, including two who are married and one who lives at his home. Because they were speaking at the detention hearing for their son, Rachid, both parents spoke of their conviction that he would appear in Court when required. Rachid's mother said that her son could live with her and she would insure his appearance whenever required.

Counsel for Bahija Saadoun subsequently told the court that the father was offering $50,000, but only to secure Bahija's release. He said that Bahija had three sisters in Morocco, all married. This discrepancy was significant because in the interim, the government had proffered evidence from one of the co-defendants who told government agents that Bahija had also tried to arrange a marriage for an unmarried sister who still lived in Morocco. The discrepancy was also significant because Bahija had initially told probation that all of her immediate family was in the U.S. and that nobody was left in Morocco. Bahija's counsel also said that the father had been misunderstood when he spoke in court and that he had no farm in Morocco, and spent most of the year in the United States and not in Morocco.

All of the defendants with ties to Morocco present a risk of flight.

For the defendants who are not citizens and face deportation upon conviction, Rachid Saadoun, Fatima Saadoun, Fouad Elhadiri, and Khalid Kassem, no surety or other security has been offered which would result in significant financial harm to anyone of importance to the defendant(s) and permanently living in the United States, should the defendants flee. Nor have counsel for any of these defendants offered conditions which would present a significant disincentive to leave the United States for Morocco to avoid serving a term of imprisonment upon conviction. Mr. Elhadiri has an ex-wife and a child here, but provided inconsistent information about where they live. Elhadiri is a cousin to the Saadouns. His brother came to the United States for an allegedly arranged marriage, but has already left the country and returned to Morocco. Khalid Kassem is the brother of Bahija Saadoun's husband. He is financially supporting his mother in Morocco.

Bahija Saadoun and Hamid Kassem are married, and the parents of a five year old born in the United States. They are both naturalized citizens of the U.S. However, Hamid Kassem has a Moroccan passport, and both are said to retain their Moroccan citizenship. They own property in which there is no equity, and the value is less than the outstanding mortgages. Bahija lost her job, apparently for reasons unrelated to the arrest. They are regarded by the prosecutor as the most culpable of the defendants and are also under a continuing investigation for obstruction of justice, which could result in longer terms of imprisonment if they are convicted.

After considering the financial and familial ties of the defendants to Morocco, the lack of sufficient surety to assure the court that financial harm would come to someone permanently living in the United States whose welfare is important to the defendants should they flee, the dearth of credible information about the defendants' backgrounds, the Court cannot find that the proposed conditions of release provide reasonable assurance that the defendants will appear for trial. There are also concerns regarding the well-being of witnesses which are not addressed by the proposed conditions of release.